**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| STEVEN ALLEN KOONCE, | ) | Case No. 14-11375-JDL |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |

---

**OBJECTION OF RICHART DISTRIBUTORS, INC., TO
APPLICATION FOR INTERIM ALLOWANCE OF ADMINISTRATIVE
EXPENSES, ATTORNEY'S FEES FOR TRUSTEE, WITH BRIEF IN SUPPORT**

---

PHILLIPS MURRAH P.C.

Clayton D. Ketter, OBA #30611
Corporate Tower, Thirteenth Floor
101 North Robinson Avenue
Oklahoma City, Oklahoma  73102
405.235.4100 – telephone
405.235.4133 – facsimile
cdketter@phillipsmurrah.com

**Attorneys for Richart Distributors, Inc.**

1177432

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................... 1

   A.  Richart's Secured Claim ................................................................................... 1

   B.  Sale of Collateral ............................................................................................. 2

   C.  Trustee's Adversary Proceeding Seeking to Vacate Richart's Lien .................... 3

   D.  The Trustee's State Court Attempts to Vacate Richart's Lien ........................... 4

   E.  Richart's Motion for Relief from the Automatic Stay ...................................... 4

III.  ARGUMENT AND AUTHORITIES ................................................................... 5

   A.  EBBN Has Failed to Meet its Burden of Establishing that Any Amounts
      Awarded Can Be Charged Against Richart's Collateral Under Bankruptcy
      Code Section 506(c) .......................................................................................... 5

      i.    EBBN Lacks Standing to Seek Recovery Under Section 506(c) ............... 6

      ii.   The Fees and Expenses Were Not Necessary to the Protection of Richart's
         Collateral .......................................................................................... 7

      iii.  The Fees and Expenses Were Not Primarily for the Benefit of Richart
         and No Direct Quantifiable Benefit Has Been Shown ............................... 7

   B.  Fees and Expenses Sought By EBBN Are Not Compensable Under
      Bankruptcy Code Section 330 ......................................................................... 11

      i.    EBBN Is Not Permitted to Recover Any Amounts Incurred
         Prior to its Employment ..................................................................... 12

      ii.   EBBN Cannot Recover for Tasks That Were Not Necessary,
         Reasonable, or Justified ...................................................................... 13

      iii.  EBBN Cannot be Compensated for Performing Services of the Trustee ..... 14

   C.  Richart Did Not Consent to the Payment of Administrative Expenses from its
      Collateral ....................................................................................................... 17

IV.  CONCLUSION .................................................................................................... 19

## TABLE OF AUTHORITIES

### Cases

*Brookfield Prod. Credit Ass'n v. Borron,*
  738 F.2d 951 (8th Cir. 1984) ................................................................. 7, 9

*Gen. Elec. Credit Corp. v. Peltz (In re Flagstaff Foodservice Corp.),*
  762 F.2d 10 (2d Cir. 1985) ...................................................................... 7

*Hartford Underwriters Ins. Co. v. Union Planters Bank,*
  530 U.S. 1 (2000) .................................................................................. 6

*In re Ben Franklin Retail Store Inc.,*
  210 B.R. 315 (Bankr. N.D. Ill. 1997) .................................................... 12

*In re Bird,*
  577 B.R. 365 (B.A.P. 10th Cir. 2017) ....................................... 12, 13, 14

*In re Boltec Indus., Inc.,*
  1993 WL 853018 (Bankr. E.D. Mich. Jan. 8, 1993) ............................. 16

*In re Bryan,*
  857 F.3d 1078 (10th Cir. 2017) .......................................................... 6, 8

*In re Codesco,*
  18 B.R. 225 (Bankr. S.D.N.Y. 1982) .................................................... 12

*In re DeCelis,*
  349 B.R. 465 (Bankr. E.D. Va. 2006) ................................................... 17

*In re Domistyle, Inc.,*
  811 F.3d 691 (5th Cir. 2015) ............................................................. 5, 6

*In re Emons Indus., Inc.,*
  50 B.R. 692 (Bankr. S.D.N.Y. 1985) ...................................................... 6

*In re Evanston Beauty Supply, Inc.,*
  136 B.R. 171 (Bankr. N.D. Ill. 1992) ...................................................... 9

*In re EWC, Inc.,*
  138 B.R. 276 (Bankr. W.D. Okla. 1992) ............................................... 12

*In re Florence Disc. Ctr.,*
  175 B.R. 939 (Bankr. S.D. Ohio 1994) ................................................... 6

*In re Hardy,*
  39 B.R. 804 (Bankr. N.D. Okla. 1984) ............................................. 5, 8, 9

*In re Hen House Interstate, Inc.,*
  177 F.3d 719 (8th Cir. 1999) ................................................................. 5

*In re Hiddleston,*
  162 B.R. 13 (Bankr. D. Kan. 1993) ........................................................ 8

*In re Howard Love Pipeline Supply Co.,*
  253 B.R. 781 (Bankr. E.D. Tex. 2000) ................................................. 15

*In re Iberica Mfg., Inc.,*
  180 B.R. 707 (Bankr. D.P.R. 1995)
  (citing 3 *Collier on Bankruptcy* ¶ 506.06 (15th ed. 1994)) ................... 5

*In re K & L Lakeland, Inc.,*
  128 F.3d 203 (4th Cir. 1997) ................................................................. 7

*In re King,*
  546 B.R. 682 (Bankr. S.D. Tex. 2016) ................................................. 15

*In re Kusler,*
    224 B.R. 180 (Bankr. N.D. Okla. 1998) ..................................................... 14, 15, 16
*In re Lederman Enters., Inc.,*
    997 F.2d 1321 (10th Cir. 1993) ...................................................................... 13
*In re McAuley Textile Corp.,*
    11 B.R. 646 (Bankr. D. Me. 1981)...................................................................... 15
*In re Perkerson,*
    No. 93-20327, 1994 WL 16005192 (Bankr. S.D. Ga. Nov. 23, 1994) .................................... 18
*In re Res. Tech. Corp.,*
    356 B.R. 435 (Bankr. N.D. Ill. 2006) ................................................................ 6
*In re Schupbach Investments, L.L.C.,*
    808 F.3d 1215 (10th Cir. 2015) ...................................................................... 12
*In re Sherrill,*
    78 B.R. 804 (Bankr. W.D. Tex. 1987) ................................................................. 6
*In re Standard Foundry Products, Inc.,*
    No. 95 B 1200, 1998 WL 729586 (N.D. Ill. Oct. 15, 1998) ............................................. 9
*In re Visual Indus., Inc.,*
    57 F.3d 321 (3d Cir. 1995)
    (citing *General Electric Credit Corporation v. Levin & Weintraub (In re Flagstaff*
    *Foodservice Corp.)*, 739 F.2d 73 (2d Cir. 1984))..................................................... 5

**Statutes**
11 U.S.C. § 327(a) ......................................................................................... 11
11 U.S.C. § 327(d) ......................................................................................... 14
11 U.S.C. § 328(b) ................................................................................. 14, 15, 16
11 U.S.C. § 330 .................................................................................. 11, 12, 13, 14
11 U.S.C. § 363(f) ......................................................................................... 17
11 U.S.C. § 506(c) .................................................................................... passim
11 U.S.C. § 507 ............................................................................................ 18
11 U.S.C. § 704(a) .................................................................................... 15, 16
11 U.S.C. § 727 ............................................................................................. 2
12 Okla. Stat. § 706........................................................................................ 2

Secured creditor Richart Distributors, Inc. ("Richart"), by and through its undersigned counsel, hereby submits this Objection to the *Application for Interim Allowance of Administrative Expenses, Attorney's Fees for Trustee* [Dkt. No. 140] ("EBBN's Fee Application") filed by Elias, Books, Brown & Nelson, P.C. ("EBBN"). For its Objection, Richart states as follows:

## I.    INTRODUCTION

At the December 18, 2017 hearing on Richart's motion for relief from stay, the Court explicitly instructed EBBN to file an application within thirty days seeking any expenses recoverable under section 506(c) of title 11 of the United States Code (the "Bankruptcy Code"). EBBN's Fee Application, however, goes well beyond the bounds of what is permitted to be recovered under the extremely narrow limits of Bankruptcy Code section 506(c). Accordingly, such amounts cannot be surcharged against Richart's collateral.

Further, EBBN's Fee Application seeks amounts that are not recoverable under Bankruptcy Code section 330—a prerequisite to recovery under section 506(c). Such amounts include billings before EBBN was employed, matters that are to be handled by the chapter 7 trustee, and tasks performed from which the bankruptcy estate derived no benefit. Such amounts cannot be allowed. Accordingly, EBBN's Fee Application should be denied to the extent set forth herein.

## II.    BACKGROUND

### A.    Richart's Secured Claim

1.    On September 17, 2013, the District Court for Oklahoma County, Oklahoma, entered judgment in Richart's favor against Debtor, Steven Allen Koonce (the "Debtor"). The judgment, *inter alia*, found that the Debtor was liable for conversion and fraud and awarded Richart principal damages in the amount of $111,717.48 (the "State Court Judgment").

2.      Richart proceeded, in accordance with Okla. Stat. tit. 12, § 706, to secure the State Court Judgment by filing Statements of Judgment in multiple counties, including Canadian County on September 24 and 25, 2013.

3.      On April 2, 2014 (the "Petition Date"), the Debtor filed his voluntary Chapter 7 bankruptcy petition [Dkt. No. 1].

4.      On January 12, 2015, Richart filed a proof of claim in this case asserting a secured claim in the amount of $117,096.29 [Claim No. 13].

5.      On October 31, 2014, Richart filed an adversary complaint against the Debtor seeking denial of discharge under Bankruptcy Code sections 523 and 727, which was assigned Case No. 14-01108.

6.      On June 17, 2015, the Court entered an agreed judgment recognizing that, *inter alia*, the State Court Judgment is a valid and binding judgment against the Debtor; and the debt associated with the State Court Judgment is not dischargeable under Bankruptcy Code sections 523(a)(2)(A), (a)(4), and (a)(6).

**B.      Sale of Collateral**

7.      Richart's statements of judgment encumbered certain real property owned by the Debtor having a mailing address of 1210 E. State Highway 152, Mustang, Oklahoma 73064 (the "Real Property").

8.      The Real Property was also encumbered by a mortgage in favor of Bank of Commerce.

9.      On February 9, 2015, Lyle R. Nelson as the Chapter 7 Trustee (the "Trustee") filed his Trustee's Motion to Sell Estate's Interest in Real Property Free and Clear of Liens and Claims [Dkt. No. 89] (the "Motion to Sell").  The Motion to Sell proposed to sell the Real Property for the gross purchase price of $340,000.00.

2

10.     On March 18, 2015, the Court entered the Agreed Order on Trustee's Motion to Sell Estate's Interest in Real Property Free and Clear of Liens and Claims [Dkt. No. 96] (the "Sale Order").  The Sale Order provided for the proceeds of the sale to be used to pay the mortgage held by Bank of Commerce and any outstanding ad valorem taxes, with the remainder to be held by the Trustee pending further order of the Court.  The Sale Order further provided that any judgment liens would attach to the remaining sale proceeds held by the Trustee.

11.     On October 28, 2016, the Trustee filed an Interim Report [Dkt. No. 117] providing that the net proceeds realized from the sale of the Real Property was $127,103.90.

C.      **Trustee's Adversary Proceeding Seeking to Vacate Richart's Lien**

12.     On April 21, 2016, the Trustee filed an Adversary Complaint against Richart commencing that action styled *Lyle R. Nelson, Trustee v. Richart Distributors, Inc.*, Case No. 16-01048-JDL (Bankr. W.D. Okla.) (the "Adversary Proceeding").

13.     Richart's Answer [Case No. 16-01048-JDL, Dkt. No. 4], which generally denied the Trustee's claims, was filed on May 23, 2016.

14.     On June 2, 2017, the Trustee filed an Amended Complaint [Case No. 16-01048-JDL, Dkt. No. 21] in the Adversary Proceeding asserting, *inter alia*, that the judgment liens were invalid.

15.     On June 16, 2017, Richart filed a motion seeking to dismiss the Trustee's claims asserted in the Amended Complaint [Case No. 16-01048-JDL, Dkt. No. 22].

16.     On July 7, 2017, the parties filed a Joint Stipulation of Dismissal with Prejudice [Case No. 16-01048-JDL, Dkt. No. 24], dismissing the Trustee's claims asserted in the Adversary Proceeding with prejudice.

**D.     The Trustee's State Court Attempts to Vacate Richart's Lien**

17.     On December 16, 2016, the Trustee filed a Motion to Clarify in District Court for Oklahoma County, Oklahoma, seeking clarification as to whether the State Court Judgment was previously opened, leaving Richart's judgment liens intact, or whether it was vacated.

18.     On February 24, 2017, following a hearing on the Motion to Clarify, the state court sided with Richart, acknowledging that the State Court Judgment had been opened, as opposed to vacated, with an Order entered in the state court action memorializing the same, which Order provided that: "[t]he Judgment shall only be opened, as distinguished from vacated, in accordance with *Halliburton v. Illinois Life Insurance Co.*, 1935 OK 36, 40 P.2d 1086."

19.     On July 13, 2017, the Trustee filed his Amended Motion to Release Judgment Liens (the "Motion to Release") in the state court action, which Motion to Release argued that Richart's judgment liens should be released as void.

20.     On July 31, 2017, Richart filed its Objection to the Motion to Release.

21.     On August 17, 2017, the Trustee filed a Reply to Richart's Objection.

22.     On September 13, 2017, following a hearing on the matter, the state court entered its Journal Entry Denying Chapter 7 Trustee's Amended Motion to Release Judgment Liens.

**E.     Richart's Motion for Relief from the Automatic Stay**

23.     On November 10, 2017, Richart filed a motion seeking relief from the automatic stay as to the proceeds from the sale of the Real Property [Dkt. No. 122].

24.     On November 24, 2017, objections to Richart's motion for relief from stay were filed by the Trustee [Dkt. No. 123] and EBBN [Dkt. No. 124].  The objections asserted, *inter alia*, that Richart's lien only attached to half of the proceeds, with the other half being owned by the Debtor's wife.  The objections also asserted that administrative expenses could be charged against Richart's collateral.

25.    On December 18, 2017, a hearing was held on the motion for relief.  At such hearing, the Court ruled that a motion for relief was not the proper means of relief being sought. The Court also instructed that the Trustee and EBBN should file an application pursuant to Bankruptcy Code section 506(c) within thirty days.  An order was subsequently entered to that effect [Dkt. No. 136].

26.    On January 17, 2018, EBBN's Fee Application was filed, wherein, EBBN seeks total fees of $36,156.00 and expenses of $346.62.

### III.    ARGUMENT AND AUTHORITIES

**A.    EBBN Has Failed to Meet its Burden of Establishing that Any Amounts Awarded Can Be Charged Against Richart's Collateral Under Bankruptcy Code Section 506(c).**

It is a well-established rule that administrative expenses cannot generally be charged against secured collateral.  *In re Visual Indus., Inc.*, 57 F.3d 321, 324 (3d Cir. 1995) (citing *General Electric Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.)*, 739 F.2d 73, 76 (2d Cir. 1984)); *In re Hen House Interstate, Inc.*, 177 F.3d 719, 721–22 (8th Cir. 1999); *In re Hardy*, 39 B.R. 804, 807 (Bankr. N.D. Okla. 1984); *In re Iberica Mfg., Inc.*, 180 B.R. 707, 712 (Bankr. D.P.R. 1995) (citing 3 *Collier on Bankruptcy* ¶ 506.06 (15th ed. 1994)) (providing that general administrative costs, statutory commissions for the trustee, value of labor for the debtor, and attorneys' fees of the estate are not generally recoverable from the holder of a secured claim).  "Rather, such expenses are normally chargeable only against the unburdened assets of the estate . . . ." *Visual Indus.*, 57 F.3d at 324.

Bankruptcy Code section 506(c) provides a "narrow and extraordinary exception" to the general rule that administrative expenses cannot be satisfied out of collateral.  *In re Domistyle, Inc.*, 811 F.3d 691, 695 (5th Cir. 2015).  That section provides:

5

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property.

11 U.S.C. § 506(c). "Section 506(c) was not intended as a substitute for the recovery of administrative expenses that are appropriately the responsibility of the debtor's estate." *In re Sherrill*, 78 B.R. 804, 806 (Bankr. W.D. Tex. 1987). The trustee bears the burden of establishing that the requirements of section 506(c) have been met. *Domisytle*, 811 F.3d at 695. Such burden is a heavy one. *In re Emons Indus., Inc.*, 50 B.R. 692, 695 (Bankr. S.D.N.Y. 1985); *In re Florence Disc. Ctr.*, 175 B.R. 939, 941 (Bankr. S.D. Ohio 1994).

The circumstances under which section 506(c) applies are extremely narrow. Bankruptcy Code section 506(c) will only be applied where the expenses were necessary and reasonable, and only to the extent that they actually provided a benefit to the secured creditor or the collateral. *In re Bryan*, 857 F.3d 1078, 1084 (10th Cir. 2017). Here, EBBN's request fails to satisfy the necessary and benefit requirements of Bankruptcy Code section 506(c).

### i.    *EBBN Lacks Standing to Seek Recovery Under Section 506(c)*

The United States Supreme Court has interpreted Bankruptcy Code section 506(c) as only allowing a trustee to seek to surcharge collateral. *Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1 (2000). In reliance on the *Hartford* decisions, courts hold that a trustee's counsel lacks standing to seek recovery of fees under section 506(c). *See, e.g.*, *In re Res. Tech. Corp.*, 356 B.R. 435, 444 (Bankr. N.D. Ill. 2006) (holding that trustee's counsel could not recover under section 506(c) because such request can be initiated "only at the instance of a trustee").

EBBN's Fee Application was filed by EBBN, not the Trustee. Although EBBN represented the Trustee and the Trustee is a member of EBBN, EBBN nevertheless is not the

6

chapter 7 trustee.  Accordingly, EBBN lacks standing to seek fees pursuant to Bankruptcy Code section 506(c).

### ii.        The Fees and Expenses Were Not Necessary to the Protection of Richart's Collateral

Even if EBBN had standing to assert a claim under Bankruptcy Code section 506(c), such request should still be denied because the services provided by EBBN were not necessary to protect or preserve Richart's interest in the collateral.  This is not a situation where the Real Property was in need of repairs to avoid additional damage, such as a leaky roof.  Nor is it a situation where expenditures were made to keep property operational, such as paying property taxes or maintenance costs.  Instead, the Trustee took it upon himself to sell the Real Property with the hope that he could avoid Richart's lien and uncover value for administrative expenses and unsecured creditors.  Such action, however, was not necessary as to Richart's interest in the Real Property.  Further, such action ended up being completely unnecessary, because Richart's lien was ultimately found to be valid.  Because EBBN's services were not necessary, EBBN is not entitled to section 506(c) treatment.

### iii.       The Fees and Expenses Were Not Primarily for the Benefit of Richart and No Direct Quantifiable Benefit Has Been Shown

To recover under Bankruptcy Code section 506(c) the charge must have been "expended *primarily* for the benefit of the creditor" and the creditor must have "directly benefitted from the expenditure." *Gen. Elec. Credit Corp. v. Peltz (In re Flagstaff Foodservice Corp.)*, 762 F.2d 10 (2d Cir. 1985) (emphasis added); *see also In re K & L Lakeland, Inc.*, 128 F.3d 203, 208 (4th Cir. 1997) (only expenditures that were made for the primary benefit of the secured creditor and actually provided a benefit will be allowed under Bankruptcy Code section 506(c)); *Brookfield Prod. Credit Ass'n v. Borron,* 738 F.2d 951, 952 (8th Cir. 1984) (same).  Thus, the benefit requirement of Bankruptcy Code section 506(c) has two components: (1) the trustee's purpose in

7

making the expenditure must have been to primarily benefit the secured creditor; and (2) the creditor must have actually realized a benefit from the expenditure.  Here, neither component has been met.

As to the first component, courts hold that when an expense is incurred with the primary purpose of benefitting parties other than the secured creditor, it fails to qualify under Bankruptcy Code section 506(c).  *See, e.g.*, *Bryan*, 857 F.3d at 1084; *In re Hardy*, 39 B.R. at 807; *In re Hiddleston*, 162 B.R. 13, 16 (Bankr. D. Kan. 1993) ("Expenses undertaken to improve the position of the debtor-in-possession, although indirectly benefiting the creditor, are not recoverable [under section 506(c)] . . . .").

In *Bryan*, the Tenth Circuit, interpreting Bankruptcy Code section 506(c), affirmed the denial of fees and costs incurred in a trustee's unsuccessful lien challenge because while such challenge had the potential to benefit unsecured creditors, it provided no benefit to the secured creditor.  *In re Bryan*, 857 F.3d at 1084.  Accordingly, the secured creditor's collateral could not be surcharged with the fees and costs.  *Id.*  Similarly, in *Hardy*, a debtor spent sums maintaining and improving an office building with the hope that it could sell the building for more than the value of the liens encumbering it, returning funds to the estate.  *In re Hardy*, 39 B.R. at 807.  The debtor then requested that its expenditures be classified as section 506(c) expenses.  *Id.*  While the court allowed expenses of the debtor related to repairs made to the building, it denied the request as to the debtor's legal fees finding that the benefit conferred on the creditor was "too remote and attenuated."  *Id.*  The court specifically stated that "[w]hen the debtor elects to not abandon property but holds it in expectation of selling at some surplus value certain risk of that decision necessarily accompanies it."  *Id.*

In this case, rather than abandon the Real Property, the Trustee chose to liquidate it with the hope of avoiding Richart's lien on the same. In so doing, the Trustee took on the risk that he would be unsuccessful in that endeavor. The fees and expenses claimed by EBBN were done with the primary goal of benefitting unsecured creditors and the Trustee. Richart's liens fully encumbered the Real Property, and the only way the Trustee could realize any value for the estate to pay unsecured claims, including administrative expenses, was to avoid Richart's lien. Those actions were not undertaken with the goal of benefitting Richart. Rather, the primary beneficiary of EBBN's actions (had they been successful) would have been the Trustee, EBBN, and unsecured creditors. Because the services performed by EBBN were not for the primary benefit of Richart, section 506(c) treatment is not available.

As to the second component, the movant bears the burden of establishing that a concrete and precise quantitative (not qualitative or generalized) benefit was enjoyed by the secured creditor. *In re Evanston Beauty Supply, Inc.*, 136 B.R. 171, 176 (Bankr. N.D. Ill. 1992); *see also In re Hardy*, 39 B.R. at 807 (holding that section 506(c) "demands quantitative proof, not theoretical statements of potential benefits"). Generally, when an asset is sold, the test of quantitative benefit is determined by whether the property's sale value would have been lower but for the trustee's efforts. *See, e.g.*, *Brookfield Prod. Credit Ass'n*, 738 F.2d at 953; *In re Standard Foundry Products, Inc.*, No. 95 B 1200, 1998 WL 729586, at *4 (N.D. Ill. Oct. 15, 1998).

EBBN has provided absolutely no evidence establishing that the value of the Real Property increased because of the services provided. Rather, EBBN's Fee Application contains the general statement that the services "provided a benefit to the Estate and specifically creditors and claimants with an interest in the real estate . . . ." See EBBN's Fee Application at ¶ 12.

EBBN goes on to provide that "no creditor including Richart or Trina Koonce would have received any distribution or money from the real property as the first mortgage holder would have foreclosed the various competing claims of all other creditors." *Id.* These, generalized statements are insufficient to meet EBBN's substantial burden of establishing a precise quantitative benefit to Richart. No evidence has been provided that if the property had been abandoned and the first mortgage holder, Richart, or another secured creditor foreclosed on the property, that the amount received in such proceeding would have been less than by the Trustee selling the Real Property.

Further, the specific services performed by EBBN provided no benefit to Richart. For example, EBBN seeks compensation split into the following categories:

- $20,011.00 for "case administration surrounding the negotiation, title, motion and sale of the real estate;"

- $500.00 for the preparation of employment and compensation documents for the Estate accountant;

- $1,100.00 for the preparation of EBBN's Fee Application; and

- $15,045.00 related to EBBN contesting Richart's motion for relief from stay.

*See* EBBN's Fee Application at ¶¶14-15. There can be no dispute that Richart derived no benefit from the estate's employment and compensation of an accountant, the preparation of EBBN's Fee Application, or EBBN's opposition to Richart's motion for relief from stay. Such actions either had no relation to Richart or, in the case of opposition to Richart's motion for relief from stay, were actually negative towards Richart. Similarly, the claimed expenses lack any detailed description sufficient to determine that they benefitted Richart.

EBBN's actions with regard to the sale of the Real Property also cannot be said to have benefitted Richart. A large number of the time entries for which EBBN seeks treatment under

section 506(c) concerned the Trustee's attempts to invalidate Richart's judgment lien, which attempts were unsuccessful as Richart's lien was found to be valid. Many other time entries concern the Trustee's attempt to invalidate the Debtor's wife's claimed interest in the Real Property, which attempts again were unsuccessful as the Trustee now apparently does not contest the wife's claim. Such actions can in no way be said to have benefitted Richart. Further, the Trustee's actions in selling the fully-encumbered Real Property and contesting Richart's lien forced Richart to endure years of costly litigation. But for the Trustee's actions, Richart would have saved thousands in legal fees and been able to execute on its collateral years ago.

EBBN has failed to meet its burden of establishing that its services were undertaken for the primary benefit of Richart or that Richart actually realized a precise quantitative benefit from such services. Accordingly, EBBN should not be permitted to surcharge Richart's collateral.

**B.    Fees and Expenses Sought By EBBN Are Not Compensable Under Bankruptcy Code Section 330**

Bankruptcy Code section 327(a) provides that a bankruptcy trustee may, with court approval, employ professional persons, including attorneys, to assist them in their duties. 11 U.S.C. § 327(a). A bankruptcy professional's compensation is governed by Bankruptcy Code section 330, which provides, in pertinent part, that:

> After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee . . . or professional person employed under section 327 or 1103—
>
> (A) reasonable compensation for actual, necessary services rendered by the trustee . . . professional person, or attorney and by any paraprofessional person employed by such person; and
>
> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1). Section 330 requires a bankruptcy court to independently review the fees and expenses requested by a professional person employed by the trustee to ensure that the

services provided were necessary, reasonable, and justified.  *See In re Bird*, 577 B.R. 365, 373-74 (B.A.P. 10th Cir. 2017).  "The bankruptcy court's scrutiny of professional fee applications is particularly important when, as is the case here, a trustee and/or his firm has been authorized to serve as an attorney or accountant for the estate."  *Id.*

If a bankruptcy professional fails to satisfy the requirements of Bankruptcy Code section 330, they are prohibited from charging their fees against secured collateral pursuant to Bankruptcy Code section 506(c).  *In re EWC, Inc.*, 138 B.R. 276, 283 (Bankr. W.D. Okla. 1992) (holding that Bankruptcy Code section 506(c) is not a license for professionals to ignore the requirements of Bankruptcy Code section 330); *In re Codesco*, 18 B.R. 225, 230 (Bankr. S.D.N.Y. 1982) ("Counsel may not use Code § 506(c) as an alternative in order to avoid the requirements imposed under Code § 330."); *In re Ben Franklin Retail Store Inc.*, 210 B.R. 315, 317 (Bankr. N.D. Ill. 1997) (holding that an "expense must be allowable under some other section (e.g., § 330) before it is recoverable under § 506(c)").  Thus, satisfying Bankruptcy Code section 330 is a prerequisite to EBBN's ability to use Richart's collateral to pay its fees.  As explained herein, EBBN's Fee Application fails to meet the standard set forth in Bankruptcy Code section 330 in multiple respects.

> *i.*     ***EBBN Is Not Permitted to Recover Any Amounts Incurred Prior to its Employment***

While a court may authorize an attorney's employment *post facto*, it should only be done "in the most extraordinary circumstances."  *In re Schupbach Investments, L.L.C.*, 808 F.3d 1215, 1220 (10th Cir. 2015).  Absent an order granting employment *nunc pro tunc* after a finding of extraordinary circumstances, *post facto* fees are not recoverable.  *Id.* at 1220-21.

The order authorizing the employment of EBBN was entered on June 3, 2014 [Dkt. No. 34]. Such order *did not* grant employment *nunc pro tunc* to the Petition Date. Therefore, EBBN is not permitted to recover *post facto* fees.

The timesheets submitted by EBBN in support of EBBN's Fee Application, however, contain entries for services performed prior to June 3, 2014, in the amount of $6,801.25. Such *post facto* fees are not recoverable and must be disallowed.

### ii.       *EBBN Cannot Recover for Tasks That Were Not Necessary, Reasonable, or Justified*

Bankruptcy Code section 330(a)(4) provides that professional persons cannot recover compensation for services that were not "reasonably likely to benefit the debtor's estate" nor "necessary to the administration of the case." 11 U.S.C. § 330(a)(4). An element of whether the services were necessary to the administration of the case is "whether they benefitted the bankruptcy estate." *In re Lederman Enters., Inc.*, 997 F.2d 1321, 1323 (10th Cir. 1993). "[T]he beneficial nature of legal services must be determined before a reasonableness inquiry may even be conducted . . . ." *Id.*

The Tenth Circuit has found that a trustee's services are not necessary to a fully encumbered asset. *See In re Bird*, 577 B.R. at 373-74. In *Bird*, a chapter 7 trustee and his counsel appealed the bankruptcy court's denial of fees under Bankruptcy Code sections 330 and 506(c) incurred in conjunction with litigating a claimed homestead exemption and attempted sale of fully encumbered property. *Id.* at 369. The Bankruptcy Appellate Panel for the Tenth Circuit affirmed the denial of fees, finding that the services were not necessary. *Id.* at 379. In rendering its decision, the court cited to provisions of the Trustee Handbook that prohibit the sale of fully encumbered property and direct that estate property should not be sold "where the proceeds of liquidation will primarily benefit the trustee or the professionals." *Id.*

As in *Bird*, EBBN's services incurred in conjunction with selling the Real Property were not necessary to the administration of the Debtor's estate. Because the Real Property was fully encumbered, the fees incurred provided no benefit to the estate. Although the Trustee sought to avoid Richart's lien, such actions were wholly unsuccessful, and the Trustee should have realized that his claims lacked validity. This is particularly true given that the Trustee voluntarily dismissed his claims, with prejudice, after Richart filed its motion to dismiss. Accordingly, the requested fees were not necessary and cannot, therefore, be recovered under Bankruptcy Code section 330.

EBBN's services were also not beneficial to the estate. The entirety of the proceeds from the sale of the Real Property are payable to either the Debtor's spouse or Richart. Thus, EBBN's services resulted in zero value to the Debtor's estate. As a result, EBBN's services do not meet the compensation criteria of Bankruptcy Code section 330(a)(1).

### iii.    *EBBN Cannot Be Compensated for Performing Services of the Trustee*

A chapter 7 trustee is permitted by the Bankruptcy Code to hire themselves or their own law firm to provide legal assistance in a case. 11 U.S.C. § 327(d). However, when a trustee hires himself or his own firm, such retained professional cannot recover for any services that are within the statutory duties of the trustee. 11 U.S.C. § 328(b). Bankruptcy Code section 328(b) specifically provides that:

> If the court has authorized a trustee to serve as an attorney or accountant for the estate under section 327(d) of this title, the court may allow compensation for the trustee's services as such attorney or accountant only to the extent that the trustee performed services as attorney or accountant for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney or accountant for the estate.

11 U.S.C. § 328(b). The burden is on the trustee's law firm to establish that its fees do not violate section 328(b). *In re Kusler*, 224 B.R. 180, 186 (Bankr. N.D. Okla. 1998); *In re King*,

546 B.R. 682, 697 (Bankr. S.D. Tex. 2016). "Where insufficient explanatory information is provided for determining the precise nature of the services rendered, the [C]ourt is compelled to determine that the services are not compensable as legal services." *In re King*, 546 B.R. at 697.

A trustee's statutory duties are set out in Bankruptcy Code section 704(a) and include the duties to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(a)(1). "Services rendered that do not require a law license are *per se* non-compensable." *In re King*, 546 B.R. at 694. Thus, the threshold question in evaluating whether fees are compensable under Bankruptcy Code section 328(b) is whether the services were non-legal in nature. *Id.*

By way of example, in *Kusler*, the court found that activities that the trustee could undertake without an attorney's help were not compensable. 224 B.R. at 194. For instance, the court found that communications between the trustee's attorney and the trustee's auctioneer were not compensable because such activities were non-legal in nature. *Id.*

Even duties that do require legal expertise are not compensable under Bankruptcy Code section 328(b) if they "are so closely related to the trustee's duties under § 704(a) that they arguably should not be compensated." *In re King*, 546 B.R. at 695. Generally, such tasks are presumed to be non-compensable, and include those tasks specifically enumerated in Bankruptcy Code section 704(a). *Id.* at 699. These presumptively non-compensable categories include selling or disposing of estate assets. *Id.* at 700 (citing *In re Lexington Hearth Lamp & Leisure*, 402 B.R. 135, 144–46 (Bankr. M.D.N.C. 2009); *In re Howard Love Pipeline Supply Co.*, 253 B.R. 781, 792–93 (Bankr. E.D. Tex. 2000); *In re McAuley Textile Corp.*, 11 B.R. 646, 648–49 (Bankr. D. Me. 1981) ("Unless accompanied by unusual difficulties, the actual performance of

fiduciary duties of the receiver and trustee in bankruptcy are their own responsibility not the responsibility of their counsel; including ... sell[ing] real estate of the business.") (citation omitted); *In re Boltec Indus., Inc.*, 1993 WL 853018, at *2 (Bankr. E.D. Mich. Jan. 8, 1993) ("The trustee in bankruptcy has a statutory duty to sell the property.  These services are to be performed by the trustee and not delegated to his lawyer.  The attorney is not entitled to compensation for the performance of the trustee's duties.") (citation omitted)).

*Kusler* is again instructive.  There, the court found that time spent by the trustee reviewing assets and preparing motions to sell the same "constitute[d] work of the trustee for which compensation over and above an appropriate trustee's fee should not be allowed . . . ."  *In re Kusler*, 224 B.R. at 187.

EBBN's Fee Application contains no discussion of Bankruptcy Code section 328(b), and EBBN has made no showing that its services do not fall under the tasks itemized in Bankruptcy Code section 704(a).  For this reason alone, EBBN's Fee Application should be denied.

Further, a review of the time entries attached to EBBN's Fee Application reveals that the tasks either do not constitute legal services and are *per se* not compensable, are presumptively not compensable because they are closely related to the Trustee's duties outlined in Bankruptcy Code section 704(a), or are so vague that it is impossible to tell what tasks were undertaken.  For example, numerous time entries relate to communications between the Trustee and third parties concerning the sale of the Real Property.  As set forth in *Kusler*, such communications are not legal in nature.  Further, the actions in selling the Real Property, including applications for approval of the same, are presumptively not compensable as they are closely related to a trustee' section 704(a) duties.  Accordingly, EBBN should not be compensated for such tasks.

**C.    Richart Did Not Consent to the Payment of Administrative Expenses from its Collateral[1]**

EBBN's Fee Application also asserts that Richart consented to the payment of administrative expenses from Richart's collateral.  This argument, however, directly contradicts Bankruptcy Code section 363(f) and the express terms of the Sale Order, which provide that Richart's lien attaches to the proceeds of the sale.  *See* Sale Order at ¶¶ 5-6.  Richart was not a signatory to the Sale Order, and as such, did not consent to any release or subordination of its lien.  *See, e.g.*, *In re DeCelis*, 349 B.R. 465, 467-74 (Bankr. E.D. Va. 2006) (sales free and clear pursuant to Bankruptcy Code section 363(f) require ***express*** consent).

EBBN relies on a provision of the Sale Order dealing with the payment of unsecured claims:

> The net proceeds received from the sale shall be paid first to Administrative expenses approved by the Court, including, but not limited to, payment of allowed Trustee's fees and expenses, Attorney fees and expenses, Closing fees and expenses and Trustee's Accountant fees and expenses all after applicable Application, Notice and Order of the Court.

*See* Sale Order at ¶ 8.  In making this argument, EBBN is attempting to twist the language of the Sale Order to obtain a result not originally intended.  The Trustee contested the validity of Richart's lien and stated an intent to avoid the lien, which would free up the sale proceeds to pay unsecured claims.  The Sale Order reflects these circumstances, providing that "[a]ny judgment liens shall attach to the remaining proceeds but shall not be paid at closing" and that "any liens shall attach to the proceeds."  *See* Sale Order at ¶¶ 5-6.  Now that the Trustee's challenge to Richart's lien claim has failed, the EBBN misconstrues the unsecured payment provision in a back door attempt to erode Richart's lien.  This position is untenable.

---

[1] This same argument was advanced by the Trustee and EBBN in conjunction with the objections to Richart's motion for relief from stay.  The response set forth herein is substantially similar to the arguments made by Richart in its reply in support of the motion for relief from stay.

The Sale Order provision referenced by EBBN provides that only "net proceeds" may be used by the Trustee. The Sale Order does not provide that all proceeds may be used. The use of the modifier "net" necessarily indicates that interests in the proceeds will first be satisfied before the Trustee is permitted to use the remainder. Any other reading would conflict with various other provisions contained in the Sale Order. For instance, as explained above, the Sale Order explicitly provides that liens covering the property shall attach to the proceeds thereof. From the inception of this matter, the Trustee stated an intent to contest Richart's lien. If successful, Richart would be an unsecured creditor, and the proceeds would be unencumbered and free for use by the Trustee to satisfy claims in the manner set forth in paragraph 8 of the Sale Order. However, given that the Trustee failed to remove Richart's lien, there are no net proceeds after satisfaction of Richart's lien.

The incompatibility of EBBN's interpretation is evidenced by the very provision cited by EBBN in the Sale Order. That provision explicitly provides that after "net proceeds" are used to pay administrative expenses, "[t]he net remaining proceeds will be distributed to creditors in the order of priority of same pursuant to 11 U.S.C. § 507." *See* Sale Order at ¶ 8.

Bankruptcy Code section 507 explicitly limits its application to unsecured claims. *See* 11 U.S.C. § 507; *In re Perkerson*, No. 93-20327, 1994 WL 16005192, at *3 (Bankr. S.D. Ga. Nov. 23, 1994) ("section 507 clearly states that its provision for priority payment extends only to unsecured claims"). If EBBN's reading of paragraph 8 of the Sale Order is adopted, the proceeds from the sale of the real estate would be used to first pay administrative expenses and then to pay unsecured claims pursuant to Bankruptcy Code section 507. Because secured claims do not count as either administrative claims or unsecured claims, under EBBN's reading, secured claims would be completely ignored. This cannot be the result intended in the Sale Order.

The Trustee's own actions evidence the absurdity of his position, as he has made numerous unsuccessful attempts, in various forums over the past couple years, to eliminate Richart's lien. If the Sale Order subordinated Richart's secured position, those attempts would have been unnecessary. Clearly there is no basis for the Trustee's slanted reading of the Sale Order.

## IV.     CONCLUSION

WHEREFORE, Richart Distributors, Inc., respectfully requests that the Court deny the Trustee's Fee Application to the extent the Trustee seeks to be paid fees from Richart's collateral.

DATED: February 7, 2018.

Respectfully submitted,

PHILLIPS MURRAH P.C.

*/s/ Clayton D. Ketter*
Clayton D. Ketter, OBA #30611
Corporate Tower, Thirteenth Floor
101 North Robinson Avenue
Oklahoma City, Oklahoma 73102
405.235.4100 – telephone
405.235.4133 – facsimile
cdketter@phillipsmurrah.com
**Attorneys for Richart Distributors, Inc.**