**Dated: March 26, 2018**

**The following is ORDERED:**





Janice D. Loyd
U.S. Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| STEVEN ALLEN KOONCE, | ) | Case No. 14-11375-JDL |
| | ) | Ch. 7 |
| Debtor. | ) | |

### OPINION AND ORDER ALLOWING TRUSTEE AND ATTORNEY FOR TRUSTEE FEES AND EXPENSES

Although the answer is not simple, the question presented in this case is straightforward: is the trustee entitled to recover his statutory trustee fees and fees for his counsel from the proceeds of his sale of fully encumbered property? On March 9, 2018, the Court conducted an evidentiary hearing upon the issues presented by the following pleadings: (1) *Application Of Trustee For Allowance Of Trustee Fees, Reimbursement Of Expenses, And Payment Of Administrative Expenses* filed by the Trustee, Lyle R. Nelson, ("Trustee") [Doc. 138]; *(2) Objection of Richart Distributors Inc., To Application Of Trustee For Allowance Of Trustee Fees, Reimbursement Of Expenses, And Payment Of Administrative Expenses,* ("Richart") [Doc. 143]; (3) *Application For Interim Allowance Of*

*Administrative Expenses, Attorney's Fees For Trustee* [Doc. 140]; (4) *Objection Of Richart Distributors, Inc., To Application For Interim Allowance Of Administrative Expenses, Attorney's Fees For Trustee* [Doc. 144]; and (5) the *Trustee's Response To Objections Of Richart Distributors, Inc. To Applications For Allowance Of Fees, Reimbursement Of Expenses, And Payment Of Administrative Expenses, Both By The Trustee As Well As Elias, Books, Brown & Nelson, P.C.* [Doc. 150].

After hearing the testimony of witnesses, the arguments of counsel, the exhibits admitted into evidence and a review of the pleadings in this matter, the following constitutes the Bankruptcy Court's findings of fact and conclusions of law as required by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.[1]

## I. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409. Reference of the bankruptcy to this Court is proper pursuant to 28 U.S.C. § 157(a) and Rule 81.4 of the Local Rules for the United States District Court for the Western District of Oklahoma. This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A), (M) and (O).

## II. Factual and Procedural Background

1. On April 2, 2014, the Debtor filed a chapter 7 bankruptcy proceeding [Doc. 1]. Thereafter Lyle R. Nelson was appointed as the Chapter 7 Trustee to administer any assets in this estate. On May 5, 2014, an Application to employ the law firm of Elias,

---

[1] All future references to "Bankruptcy Rule" or "Bankruptcy Rules" are to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated. All references to "Code", "Section", and "§" are to the United States Bankruptcy Code, Title 11 U.S.C. § 101 *et seq.*, unless otherwise indicated

2

Books, Brown and Nelson, P.C., as counsel for the Trustee was filed [Doc. 18]. On June 3, 2014, an Order granting the application to employ Attorney for Trustee was entered [Doc. 34].

2. Although the Debtor's original Schedules did not reflect the ownership of any real property, on April 7, 2014, the Debtor filed an *Amended Schedule A* listing an interest in non-exempt real property situated in Mustang, Canadian County, Oklahoma, having a value of $340,000 (the "Property") [Doc. 9]. The Schedules did not reflect that the Property was encumbered or that anyone other than the Debtor had an interest therein.

3. On January 12, 2015, Richart filed a Proof of Claim asserting a judgment lien on Debtor's interest in the Property in the amount of $117,096. [Claim 13-1].[2]

4. On February 9, 2015, the Trustee filed a *Motion to Sell Estate's Interest in Real Property Free and Clear of Liens and Claims* for the sum of $340,000 [Doc. 89]. The Motion provided that the Property was subject to a first mortgage in favor of Bank of Commerce in the approximate amount of $200,000, unpaid ad valorem taxes and two judgment liens which were reflected on a title opinion attached to the Motion. The Motion indicated that "the sale is free and clear of any liens and any liens shall attach to the proceeds" and that "the validity of any other liens, other than that of Bank of Commerce, as well as any unpaid ad valorem taxes, shall be determined by this court." The Motion specifically indicated that the Trustee intended to dispute the judgment lien claim of Richart

---

[2] The Judgment was entered in the District Court of Oklahoma County, Oklahoma, on September 17, 2013, in case styled, "*Richart Distributors, Inc. d/b/a Flomore, Case No. CJ-2013-1890*" ("the state court litigation") and the judgment lien perfected by the filing of a Statement of Judgment filed in the Office of the County Clerk of Canadian County, Oklahoma, on September 24, 2013.

3

by way of an adversary proceeding. The second judgment lien claimant was not identified in the Motion.

    5. The Motion also provided as follows:

> ¶ 7. The proceeds received from the sale shall be paid first to Administrative expenses approved by the Court, including, but not limited to, payment of allowed Trustee's fees and expenses, Attorney's fees and expenses, Closing fees and expenses and Trustee's Accountant fees and expenses all after applicable Application, Notice and Order of the Court. The net remaining proceeds will be distributed to creditors in the order of priority of same pursuant to 11 U.S.C. § 507.

    6. On March 5, 2015, a Response was filed to the Motion by Trina Koonce, the Debtor's wife, asserting that she was a co–owner of the Property and entitled to 50% of the sales proceeds from the sale of the real property [Doc. 94]. She further asserted that while she did not object to the sale of the Property and the payment of any valid liens against it, she was entitled to 50% of the net proceeds of the sale. No other party, including Richart, filed an objection or response to the Trustee's Motion.

    7. On March 18, 2015, the Court entered an *Agreed Order on Trustee's Motion to Sell Estate's Interest in Real Property Free and Clear of Liens and Claims* for the price of $340,000 with the mortgage lien of Bank of Commerce and the ad valorem taxes to be paid at closing (the "Sale Order") [Doc. 96]. Particularly relevant to the present issue before the Court, the Sale Order provided as follows:

> ¶ 5. Any judgment liens shall attach to the remaining proceeds but shall not be paid at closing. The Trustee is granted the right to object to those claims where applicable.
>
> ¶ 6. *** The sale is free and clear of all liens and any liens shall attach to the proceeds. The validity of any other liens, other than that of Bank of Commerce, as well as unpaid ad valorem taxes, shall be determined by this Court.

¶ 7. *** The one-half interest Trina Koonce holds in the real property shall attach to the proceeds of sale as well. *** The Trustee has asserted that the net proceeds and hence, Ms. Koonce's interest, is subject to the costs and fees incurred by the Estate in selling the real property and subsequently resolving the judgment liens and potentially, the statutory Trustee's fee. Ms. Koonce's (sic) reserves the right to object to the allowance or application of any of those costs and fees against her interest in the sales proceeds held by the Estate.

¶ 8. The net proceeds received from the sale shall be paid first to Administrative expenses approved by the Court, including, but not limited to, payment of allowed Trustee's fees and expenses, Attorney fees and expenses, Closing fees and expenses and Trustee's Accountant fees and expenses all after applicable Application, Notice and Order of the Court. The net remaining proceeds will be distributed to creditors in the order of priority of same pursuant to 11 U.S.C. § 507.

9. On May 1, 2015, the Trustee closed the sale of the Property for the gross contract sales price in amount of $340,000. After the payment of the first mortgage, ad valorem taxes and closing costs, the net proceeds received by the Trustee were $127,103.90 [Doc. 99].

10. On October 31, 2014, Richart filed an adversary proceeding seeking to declare the state court judgment which it had obtained against the Debtor non-dischargeable.[3] On June 17, 2015, the Court entered an *Agreed Judgment Determining Debts to be Non-dischargeable* which provided, in pertinent part, that "The Judgment entered by the State Court is hereby recognized as a valid and binding judgment against the Defendant."[4]

11. On April 21, 2016, the Trustee commenced an adversary proceeding against

---

[3] "*Richart Distributors, Inc. d/b/a Flomore, Plaintiff v. Stephen Allen Koonce, Defendant,* Adv. Case No. 14-01108-JDL".

[4] *Id*. at Doc. 15 of Adversary Proceeding.

5

Richart seeking a declaratory judgment that Richart's state court judgment and lien be determined void, that Richart had no interest in the property of the estate, including the proceeds from the sale of the Property.[5] The primary basis of the adversary was that the state court had vacated the default judgment taken against the Debtor as reflected by the docket sheet, although no journal entry of judgment was ever filed memorializing what action the District Court had taken.[6] This Court authorized the automatic stay to be lifted allowing the parties to go back to state court and have it resolve the issue as to whether the judgment taken against the Debtor had, in fact, been vacated rendering Richart's lien invalid. The state court subsequently determined that the state court judgment was never "vacated" but only "opened" which kept Richart's judgment lien in force. [Debtor's Ex. 4].

12. Based upon the state court's determination that its judgment had been merely "opened" and not vacated, Richart and the Trustee entered into a Joint Stipulation of Dismissal of Adversary Complaint with Prejudice dismissing the adversary proceeding by which the trustee had sought a declaration that Richart's state court judgment lien was invalid. [Adv. 16-01048, Doc. 24].

13. On November 10, 2017, Richart filed its *Motion for Relief from the Automatic Stay and Abandonment of Property of the Estate* requesting that the Court modify the automatic stay to permit it to foreclose its lien interest in the cash proceeds of the sale of

---

[5] *"Lyle R. Nelson, Trustee, Plaintiff v. Richart Distributors, Inc., Defendant*, Adv. Case No. 16-01048-JDL".

[6] Title 12 O.S. § 696.2(E) provides, in pertinent part: "A judgment, decree or appealable order, whether interlocutory or final, shall not be enforceable in whole or in part unless or until it is signed by the court and filed...." 12 O. S. § 696.2(D) defining a judgment, decree or appealable order providing as follows: "The following shall not constitute a judgment, decree or appealable order: A minute entry...."

6

the Property being held by the Trustee [Doc. 122]. The Trustee filed his Objection to the Motion on the basis that Trina Koonce was entitled to a one half interest in the proceeds which would not be subject to any claim of Richart, and that the Sale Order provided that the Trustee was entitled to recover his administrative costs, fees and expenses from the sale of the proceeds prior to the payment of any funds to Richart [Doc. 123].

14. On December 18, 2017, a hearing was conducted on Richart's Motion to Lift Stay to recover the sale proceeds by virtue of its valid state court judgment lien. In the hearing it was acknowledged by the parties, and as reflected by the dismissal of the Trustee's adversary to invalidate Richart's lien, that the state court proceedings had resulted in a finding that Richart had a valid judgment lien against the estate's ½ interest in the proceeds of the sale. At the hearing, the Court denied Richart's Motion to Lift the Stay for the reason that the court did not believe that such a motion was the proper procedure by which to obtain a turnover of the proceeds from the Trustee's custody. In light of the fact that the Trustee was claiming an interest in the proceeds to pay his administrative costs and fees, the Court directed the Trustee to file his request for administrative expenses for the sale of the property under § 506(c) within thirty days.

15. On January 17, 2018, the Trustee filed his *Application of Trustee for Allowance of Trustee Fees, Reimbursement of Expenses and Payment of Administrative Expenses* [Doc. 138]. Based upon the sales price of the Property (which was the only asset of the bankruptcy estate), the Trustee sought his maximum statutory commission for trustee fees under § 326 in the amount of $20,250 and expenses in the amount of $749.36. Contemporaneously with the filing of the Application for Trustee Fees, the Trustee through

his law firm filed an *Application for Interim Allowance of Administrative Expenses, Attorneys Fees for Trustee* [Doc. 140]. This Application sought the recovery of $36,156 as an interim allowance for attorneys fees and costs in the amount of $346.62. Both of the Applications (for trustee fees and attorney's fees) asserted that by virtue of the terms of the Sale Order and the failure of Richart to object to the Motion to Sell that both the Trustee's and the attorney's fees should be paid in full prior to any payment to Trina Koonce for her 50% interest in the Property and prior to Richart for its judgment lien which attached to the 50% ownership interest of the estate in the sale proceeds. In opposition to the Applications, Richart does not contest the amount of the fees and expenses sought by the Trustee, it does object to any fees and expenses being paid out of funds to which Richart's valid lien attached. Richart argues that bankruptcy law does not permit a trustee to recover fees and expenses from encumbered property except under § 506(c) to the extent that a trustee can demonstrate that such fees and expenses were reasonable and necessary and only to the extent such services actually provided a benefit to the lien or secured creditor. Richart asserts the Trustee has not urged recovery under § 506(c), but that even if he had, the sale of the fully encumbered Property here did not demonstrate the right to such fees or expenses under § 506(c). [Doc. 143, 144].

### III. Discussion

#### A. The Trustee's Entitlement to Fees and Expenses from Richart's Lien Proceeds.

In determining whether the Trustee can surcharge his fees and expenses against the proceeds of the sale of the encumbered Property, the Court begins with the general rule that the expenses of administration in a Chapter 7 case may not be surcharged

against secured collateral. *In re Bryan*, 857 F.3d 1078, 1093 (10th Cir. 2017); *In re Domistyle, Inc.*, 811 F.3d 691, 695 (5th Cir. 2015). This rule is based on the "fact that the trustee acts on the authority of the court and for the interests of the general creditors, not on the authority of the secured creditors and for their particular interests". Bryan, 587 F.3d at 1093. The aim of administering property is to generate proceeds sufficient to return a dividend to unsecured creditors. Selling fully encumbered property usually does not create any value for the estate or for the benefit of unsecured creditors, and therefore a trustee should generally not administer such property. That principle goes back 137 years when the United States Supreme Court in *Dudley v. Easton*, 104 U.S. 99, 103, 26 L.Ed. 668 (1881) stated:

> "An assignee (trustee) in bankruptcy represents the general or unsecured creditors, and his duties relate chiefly to their interests. He is in no respect the agent or representative of secured creditors, who do not prove their claims. He need not take measures for the sale of incumbered property, unless the value of the property is greater than the incumbrance".

Put concisely, "[i]t is universally recognized ... that the sale of a fully encumbered asset is generally prohibited." *In re Christensen*, 561 B.R. 195, 204 (Bankr. D. Utah 2016) (citing *In re KVN Corp.*, 514 B.R. 1, 5 (9th Cir. BAP 2014)).

The prohibition against the sale of fully encumbered property is also contained in the official Handbook for Chapter 7 Trustees in several places:

> Generally, a trustee should not sell property subject to a security interest unless the sale generates funds for the benefit of unsecured creditors. A secured creditor can protect its own interest in the collateral subject to the security interest.

U.S. DOJ Executive Office for U.S. Trs. Handbook for Chapter 7 Trustees at 4-16 (2012).

9

> *** A trustee shall not administer an estate or an asset in the state where the proceeds of liquidation will primarily benefit the trustee or the professionals, or unduly delay the resolution of the case. The trustee must be guarded by this fundamental principle when acting as trustee. Accordingly, the trustee must consider whether sufficient funds will be generated to make a meaningful distribution to unsecured creditors, including unsecured priority creditors, before administering a case as an asset case. 28 U.S.C. § 586.

*Id.* at 4-1.

Given the above law and the undisputed fact that the sale of the Property resulted in no equity for a distribution for the unsecured creditors, it is understandable that Richart argues that the Trustee is not entitled to *any* commission, fees and expenses out of Richart's cash collateral. The Court is persuaded, however, that an exception to the exclusion of *all* fees and expenses must be made for at least three reasons. First, if Richart wanted to avoid the possibility of the Trustee administering the Property and its proceeds, it could have objected to the Trustee's Motion to Sell. It did not object, and it is reasonable for this Court to infer that it failed to do so because it too believed that it was in its best interest for the Trustee to sell the property rather than abandoning it.[7]

Second, while in attempting to avoid a lien a trustee assumes the risk of failure and

---

[7] The Court is not saying that Richart's failure to object to the Motion to Sell is equivalent to it having "consented" to the entry of the Sale Order and the terms therein. There is a split of authority as to whether a secured creditor's failure to object to a sale free and clear of liens and encumbrances constitutes "consent" under § 363(a)(2) although, the majority view is that consent is implied. See e.g. *In re Tabone,, Inc.*, 175 B.R. 855, 858 (Bankr. D. N.J. 1994); *In re G S C, Inc.*, 453 B.R. 132, 184 (Bankr. S.D. N.Y. 2011); *Future Source LLC v. Reuters Ltd.*, 312 F.3d 281, 285 (7th Cir. 2002) (deeming failure to object to be consent); Contra, finding no consent, *In re DeCelis*, 349 B.R. 465 (Bankr. E.D. Virginia 2006) ("The distinction between silence and consent is clear. Unless there is a duty to speak, silence signifies nothing."); *In re Roberts,* 249 B.R. 152 (Bankr. W.D. Mich. 2000))(consent not implied). Here, the lack of objection to the sale is deemed evidence that Richart regarded the sale as being in its best interest.

is generally not entitled to be compensated from the victorious lienholder's property. However, though unsuccessful, the Trustee's action seemed eminently reasonable at the time. The Court "should evaluate the surrounding facts and circumstances to determine whether there was any perceived benefit to the estate when the Trustee undertook to sell" the Property. *In re McCombs*, 436 B.R. 421, 437 (Bankr. S.D. Tex. 2010). "Trustees should not be punished, after the fact, for judgment calls which, at the time they were made, seemed reasonable. Adopting such a 'gotcha' policy would, in the long run, do more to jeopardize than to encourage efficient administration of bankruptcies by making trustees unduly tentative about every decision in action they take." *In re Melenyzer*, 140 B.R. 143, 155 (Bankr. W.D. Tex. 1992).

At the time he sold the Property, the Court finds the Trustee had a good-faith belief that the lien was invalid and the Property was not fully encumbered. Attorney Rollin Nash, the Trustee's expert witness, testified that the Trustee's assessment that moving forward with trying to invalidate the lien was appropriate under the circumstances, and that the Trustee was justified in his fiduciary duty to seek avoidance of the Richart lien. The Trustee had before him a judgment lien dependent upon a state court judgment which appeared on the face of the docket sheet to have been "vacated". It was only after Richart's lien was challenged in this bankruptcy that the state court, based upon apparent testimony of one of Richart's attorneys that he and the court didn't really mean to "vacate" the judgment as the Court minute indicated, but intended that the judgment should be "opened" which resulted in the judgment lien remaining in full force and effect. As was testified to by the Trustee and the trustee's expert witness, in their combined sixty years of legal practice they had never seen presented the issue of a "vacated" versus "opened"

11

judgment. In its more than thirty years experience in the practice of law, this Court has similarly never been presented with the issue. This was clearly not a situation, severely frowned upon by bankruptcy courts, in which it appeared from *the outset* that the Property was unquestionably encumbered, that there was no equity for the bankruptcy estate, and that the Trustee's decision to sell it was exclusively for the Trustee's pecuniary benefit with no possible dividend to the unsecured creditors. See e.g., In re Bird, 577 B.R. 365 (10th Cir. BAP 2017);[8] *Morgan v. K. C. Machine & Tool (In re K. C. Machine & Tool Co.)* 816 F.2d 238, 246 (6th Cir. 1987). Under such unique circumstances, this Court does not believe that "a trustee should totally be denied compensation because an objecting creditor, with the benefit of 20-20 hindsight, argues that the trustee's failure to generate funds for unsecured creditors automatically merits a denial of all compensation." *In re McCombs*, 436 B.R. 421, 436 (Bankr. S.D. Tex. 2010).

Third, and most importantly, an exception to the general rule prohibiting a trustee's surcharge against encumbered property is § 506(c), which provides as follows:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of

---

[8] Richart heavily relies upon *In re Bird* in support of its argument that the Trustee is not entitled to any fees, costs or expenses in selling fully encumbered property. The principles espoused in *Bird* are sound; however, the Court finds *Bird* to be factually distinguishable from the present case. There, the IRS holding liens on two separate properties both subject to a homestead exemption in two different debtor estates agreed with the trustee to a "carve out of $10,000" in each estate. The property sold for prices of $4100 and $7500 in excess of the aggregate amount of the liens while the trustee and his counsel incurred administrative expenses in each of the separate estates of $57,200 and $61,500, respectively. The bankruptcy court, quite correctly, found that running up such administrative costs and expenses "made no sense whatsoever." In *Bird*, the court found no evidence that the trustee's sale of the secured creditor's collateral in any way provided a "benefit" to the secured creditor or the estate. As discussed below, in the present case this Court specifically finds that a benefit, and probably a substantial benefit, was conferred upon Richart by the Trustee's actions.

>   any benefit to the holder of such claim, including the payment
>   of all ad valorem property taxes with respect to the property.

A surcharge pursuant to § 506(c) "is an assessment against a secured party's collateral as reimbursement for a particular benefit to such a secured creditor." *In re Bryan*, 857 F.3d at 1093. The trustee bears the burden of proving: "(1) the expenditure was necessary, (2) the amounts expended were reasonable, and (3) the creditor benefitted from the expenses." *Id.*; *Domistyle*, 811 F.3d at 695; *In re AFCO Enterprises, Inc.*, 35 B.R. 512, 514 (Bankr. D. Utah 1983). However, in a matter especially relevant to this case, it has been held that expenses incurred contesting the validity of a secured creditor's lien cannot be said to provide a "benefit to that secured creditor in the meaning of § 506(c). *Bryan*, 357 F.3d at 1082. Section 506(c) provides for the recovery of "necessary costs and expenses", it does not mention fees. Thus, even in those circumstances in which the trustee has expended time and money to preserve or dispose of a secured creditor's collateral, the trustee's recovery under § 506(a) is to reimburse the estate for the trustee's expenditure; it is not appropriate to pay him his statutory fees/commission.

The Court finds that the Trustee's actions in selling the Property did confer a benefit to Richart. There was no dispute that the $340,000 sales price obtained by the Trustee was a good price. To Richart's benefit, the trustee also negotiated the release of another judgment lien upon the Property which was prior and superior to that of Richart's lien. The testimony from the Trustee, the Trustee's expert and counsel for Trina Koonce, the Debtor's spouse with a one-half interest in the Property, was that had the Trustee abandoned the Property in all likelihood there would have been no recovery for Richart for its lien interest.

The Court's finding that the Trustee is entitled to recover his attorney's fees, costs and expenses under § 506(c) (but not his statutory commission under § 326 as against Richart's lien proceeds), still requires the Court to determine the amount of such fees and expenses under the standards imposed by § 330.

### B. Determination of the Amount of the Fees for Attorney for Trustee.

Richart's objection to the Trustee's and his counsel's Applications for compensation do not contest the amount of fees and expenses sought, but were filed "out of an abundance of caution" to ensure that no such compensation be paid out of the sale proceeds to which its lien attached. On the other hand, counsel for the Property's co-owner, Trina Koonce, announced that she had no objection to either the Trustee's requested award of statutory compensation or attorney's fees for his counsel. Notwithstanding that the amount, as opposed to the source, of any compensation appears not to be in dispute, it is still incumbent on this Court to independently determine the value of such services. *In re Yates,* 217 B.R. 296, 300 (Bankr. N.D. Okla. 1998) ("bankruptcy court has an independent duty to review all requests for fees to determine their allowability under § 330 even if no party in interest objects to the fees").

Compensation for services and reimbursement of expenses of professional persons are governed by § 330 of the Bankruptcy Code. The normal "threshold issue" bearing on a professional's eligibility for compensation is whether the professional's services conferred a benefit on the bankruptcy estate. *Rubner & Kutner, P.C. v. U.S. Trustee (In re Lederman Enterprises, Inc.),* 997 F.2d 1321, 1323 (10th Cir.1993). In the present case the Court has already found an entitlement for recovery of costs and expenses under § 506(c) because

14

the services rendered by the Trustee and his counsel benefitted the secured creditor Richart, the question therefore becomes what is the reasonable amount of such fees and expenses. The Court may award reasonable fees for "actual, necessary services rendered by the ... professional person, or attorney and by any paraprofessional person employed by any such person...." 11 U.S.C. § 330(a)(1)(A).

Bankruptcy courts have wide discretion in awarding compensation to professionals as long as it is reasonable. *Houlihan Lokey Howard & Zukin Capital v. Unsecured Liquidating Trust (In re Commercial Financial Services, Inc.),* 427 F.3d 804, 810 (10th Cir. 2005); *Connolly v. Harris Trust Co. (In re MiniScribe),* 309 F.3d 1234, 1240 (10th Cir. 2002). Section 330(a)(3) directs that in determining what is reasonable compensation to be awarded for the professional's services: the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors including—

(A)   the time spent on such services;

(B)   the rates charged for such services;

(C)   whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D)   whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E)   with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)   whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A)-(F).

In the Tenth Circuit, an adjusted lodestar method is to be used in determining reasonable compensation for a professional's services. *MiniScribe Corp.,* 309 F.3d at 1243–44; *Lederman,* 997 F.2d at 1323. This method takes into account all of the factors specified by § 330(a)(3) and the additional factors prescribed in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974) (the "*Johnson Factors*"). The twelve *Johnson Factors* are:

(1)  The time and labor required.

(2)  The novelty and difficulty of the questions.

(3)  The skill requisite to perform the legal service properly.

(4)  The preclusion of other employment by the attorney due to acceptance of the case.

(5)  The customary fee.

(6)  Whether the fee is fixed or contingent.

(7)  Time limitations imposed by the client or the circumstances.

(8)  The amount involved and the results obtained.

(9)  The experience, reputation, and ability of the attorneys.

(10) The "undesirability" of the case.

(11) The nature and length of the professional relationship with the client.

(12) Awards in similar cases.

*Johnson,* 488 F.2d at 717-19.

As to the requested statutory trustee's compensation under § 326, the Court finds that the reasonable value of his services as trustee is the maximum allowable based upon the total of $340,000 assets administered in the case - $20,250 and expenses of $749.36.

For the reasons stated above, the allowance of this fee cannot be paid by utilizing the proceeds of the sale of the Property which attached to the lien of Richart. However, by virtue of the agreement between the Trustee and Trina Koonce, the Trustee's statutory fees and attorney's fees can be paid on a *pro rata* basis in accordance with her 50% interest in the Property.

The Court now turns to determine the amount of the attorney's fees requested for Trustee's counsel. Counsel's fee Application requests an interim allowance of attorney's fees for Trustee in the amount of $36,156:

> for the services required for the sale of the property and the time incurred with the administration of those proceeds, such as the employment and compensation of the estate accountant to generate the tax forms due from the sale of property, defense of the proceeds from the efforts of claimant Richart to obtain the proceeds to the exclusion of superior claimants, and primarily, negotiating a sale, terms and identifying and clearing title issues.

[Doc.140, pg. 9]. For reasons stated by the Court above, time expended by the Trustee or his attorneys in unsuccessfully seeking to avoid or otherwise challenge Richart's lien is not to be considered in calculating an appropriate § 506(c) award of expenses. The award of attorney's fees will be limited to services only for services related to the sale of the Property. At hearing, the Trustee testified between April 2014 and May 1, 2015, the time period for services applicable for the negotiation, title work, motion to sell and sale of the Property up to the date of closing expended eighty-seven (87) hours of attorney time at an average hourly rate of $230, for a total of $20,011. The Court has independently reviewed the attorney's time records in that time period related to the sale of the Property and found an expenditure of 87 hours to be reasonable. Applying the standards of § 330 and the

*Johnson Factors*, the Court finds that the hourly rate of $230.00 and the number of hours expended with regard to the Motion to Sell are reasonable, and that $20,011 is a reasonable attorney's fee for an award under § 506(c) as determined under the standards of § 330.

Based upon the findings of fact and conclusions of law as set forth above,

**IT IS ORDERED:**

1. That the *Application of Trustee for Allowance of Trustee Fees, Reimbursement of Expenses, and Payment of Administrative Expenses* [Doc. 138] for statutory trustee fees in the amount of $20,250 and expenses in the amount of $749.36 is **Granted**; provided however, that only one-half (½) of such statutory compensation in the amount of $10,125 and expenses in the amount of $374.68 shall be paid from the 50% interest of Trina Koonce in the sale proceeds in possession of the Trustee.

2. No statutory trustee fees shall be paid from funds in the possession of the Trustee in which Richart Distributors, Inc., has been determined to hold a valid 50% lien interest. One-half of the Trustee's expenses incurred in the amount of $374.68 shall be paid from the 50% interest of Richart in the proceeds.

3. That the *Application for Interim Allowance of Administrative Expenses, Attorney's Fees for Trustee* filed by the firm of Elias, Books, Brown & Nelson, P. C. [Doc. 140] be and the same is hereby **Granted** to the extent of attorneys fees in the amount of $20,011 and expenses in the amount of $346.62, no more than 50% of which shall be from the 50% interest of each of Trina Koonce and Richart Distributors, Inc., of funds remaining in possession of the Trustee.

### #